**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1065-24

ALEX M. SECCIA,

      Plaintiff-Appellant,

v.

JARROD J. COONEY and
USAA CASUALTY
INSURANCE COMPANY,

      Defendants,

and

RANGDUNU CORPORATION,

      Defendant-Respondent.

_____

          Argued May 5, 2026 – Decided July 22, 2026

          Before Judges Sumners and Augostini.

          On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0779-19.

          Alan A. Reuter argued the cause for appellant (Nash Law Firm LLC, attorneys; Alan A. Reuter, on the briefs).

John M. Chomko argued the cause for respondent.

PER CURIAM

Plaintiff Alex M. Seccia appeals from two orders: (1) October 11, 2024, granting summary judgment in favor of defendant Rangdunu Corporation and (2) November 22, 2024, denying reconsideration. Based on our de novo review of the record and governing legal principles, we affirm.

I.

We summarize the facts from the motion record, many of which are undisputed. Jarrod J. Cooney, an employee of Rangdunu Corporation, worked at the Bellmawr 7-Eleven store as a shift manager. The owner of the 7-Eleven, M.D. Shahjahan, instituted a "work rule" aimed at better serving the customers, prohibiting employees from leaving the premises during their shift and compensating them for "a straight [eight] hours." The store's posted work rules included a reminder of this rule: "Clock in time do not go outside of store area." Employees, including Cooney, remained clocked in for eight hours, including their thirty-minute break, and ate their lunch in the store.

On July 1, 2017, Cooney was scheduled to work from 2 p.m. to 10 p.m. During his shift, he left the store in his personal vehicle to pick up a pizza for himself and a co-worker. While driving back to the store, Cooney was involved

2

in a motor vehicle accident with plaintiff. At the time of the accident, Cooney was on the clock because he was paid straight time. After the accident, he called his co-worker to inform her that he would not be returning to the store, and his co-worker clocked him out.

Approximately two years later, plaintiff sued Cooney. By consent, on June 15, 2020, plaintiff amended his complaint to name Cooney's employer, the Rangdunu Corporation, as a defendant. On February 10, 2021, plaintiff filed a second amended complaint naming USAA Casualty Insurance Company, plaintiff's underinsured motorist carrier.

On January 27, 2022, the case went to arbitration. On February 15, 2022, Cooney requested a trial de novo. A stipulation of dismissal with prejudice was entered as to USAA and Cooney, but the vicarious liability claims against Rangdunu remained.

Rangdunu filed for summary judgment, arguing that the vicarious liability claims should be dismissed because Cooney's actions were outside his scope of employment. On October 11, 2024, the motion judge granted summary judgment in Rangdunu's favor, dismissing the remaining claims with prejudice and attaching a comprehensive written decision. Viewing the facts in a light most favorable to plaintiff, the non-moving party, the motion judge found that

3

when Cooney left the premises, he was not operating his vehicle "within the scope of his employment."  Therefore, the judge concluded that "no vicarious liability can attach" against Rangdunu.

On appeal, plaintiff contends the motion judge erred in:  (1) granting summary judgment because there were genuine issues of material fact in dispute; (2) applying an incorrect legal standard of the exceptions to the "going to" and "coming from" rule; and (3) not following the holding of the Delaware Supreme Court in Wilson v. Joma, Inc., 537 A.2d 187 (Del. 1988).

II.

We review a trial court's summary judgment decision de novo.  DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024); see also R. 4:46-2(c).  "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (citation omitted)).  "To decide whether a genuine issue of material fact exists, the trial court must draw[] all legitimate inferences from the facts in favor of the non-moving party."  Ibid. (alteration in original) (quoting Friedman v. Martinez, 242 N.J. 449, 472 (2020)) (internal quotation marks omitted); see also R. 4:46-1 to -6.  "Summary judgment should

4

be granted 'if the discovery and any affidavits show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" DeSimone, 256 N.J. at 180-81 (quoting Perez v. Professionally Green, LLC, 215 N.J. 388, 405 (2013) (citation omitted))

The summary judgment standard requires the court to conduct its analysis in light of the elements and evidentiary standard governing the cause of action. Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). "[A]s a general rule of tort law, liability must be based on personal fault." Carter v. Reynolds, 175 N.J. 402, 408 (2003). However, "[t]he imposition of vicarious liability upon employers for the acts of an employee, also known as the doctrine of respondeat superior, is based upon the idea that the employee is the agent . . . of the employer." G.A.-H. v. K.G.G., 238 N.J. 401, 415 (2019). "Under respondeat superior, an employer can be found liable for the negligence of an employee . . . if, at the time of the occurrence, the employee was acting within the scope of his employment." Carter, 175 N.J. at 408-09 (citing Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 619 (1993) (citation omitted)). "To establish vicarious liability, a plaintiff must demonstrate an employment relationship and that the alleged tort occurred in the scope of that employment." Moschella v. Hackensack Meridian Jersey Shore Univ. Med. Ctr., 258 N.J. 110, 127 (2024) (citing Carter, 175 N.J.

5

at 408-09). "The respondeat superior standard . . . focuses the [c]ourt on the relationship between the employee's job responsibilities and his or her tortious conduct." Davis v. Devereaux Foundation, 209 N.J. 269, 287 (2012). Thus, an employer is not liable for the tortious acts of an employee committed outside of the employee's scope of his or her employment. Carter, 175 N.J. at 410 (citing Restatement (Second) of Agency § 228 comment b (1958)).

"An employee who is 'going to' or 'coming from' his or her place of employment is not considered to be acting within the scope of employment." Id. at 412. However, under the "dual purpose" rule, an employer may be held liable nonetheless "where the trip serves the servant's private affairs and also is in furtherance of the master's business." Gilborges v. Wallace, 78 N.J. 342, 351 (1978) (first citing Cinque v. Crown Oil Corp., 135 N.J.L. 38, 40-41 (E. & A. 1946); and then citing Restatement (Second), Agency § 236).

### III.

### A.

We begin with plaintiff's contention that the motion judge erred in granting summary judgment because there were genuine issues of material fact in dispute, thereby making summary judgment inappropriate. Plaintiff argues that viewing the facts in a light most favorable to him for purposes of the motion,

the court must assume that Cooney was permitted to leave the premises. Under the "dual purpose" rule, there was insufficient evidence for a reasonable factfinder to find that there was only personal interest in Cooney's conduct. We are unpersuaded.

We agree that if genuine issues of material fact exist, summary judgment would be inappropriate. However, as the Supreme Court in <u>Brill v. Guardian Life Ins. Co. of Am.</u> held, a non-moving party cannot defeat a motion for summary judgment merely by pointing to any fact in dispute but rather must point to competent evidence that leads to a substantial issue of material fact. 142 N.J. at 529.

In the present case, there was no dispute that Cooney was an employee of Rangdunu, and on the day of the accident, he was working. It is also undisputed that employees were paid for eight hours straight, which included a thirty-minute break on premises. There is also no dispute that Cooney drove his own vehicle to pick up the pizza for himself and his co-worker, and that his employer did not ask him to run this errand.

On the other hand, the parties disputed whether Cooney was permitted to leave the store during his shift. Shahjahan asserted that employees were expressly prohibited from leaving the store during their shift, citing the posted

A-1065-24

work rules displayed in the store after he took over as store owner on June 2, 2017. Rangdunu maintained that this rule was clearly posted, strictly enforced, and known by the employees. According to Shahjahan, this rule was also verbally conveyed to Cooney. However, Cooney testified that his understanding was that he could leave the store if another employee was present to assist customers, and that he always notified Shahjahan before he left the store.

The parties also disputed, however, whether Cooney received permission from Shahjahan on the day of the accident to leave the store to get the pizza. Cooney stated that Shahjahan "knew exactly where [he] was," and that Cooney "would always let him know before [he] left." However, Shahjahan claimed he was not informed of Cooney's actions on the day of the accident until years later and that Cooney concealed the accident from him, stating that: "[Cooney] did not advise me at the time that he had been in an automobile accident or the circumstances surrounding that accident. He certainly never informed me that he had left the store in the middle of his shift to pick up pizza . . . ."

The motion judge correctly focused his analysis on "whether Cooney's driving, in and of itself, regardless of authorization from Shahjahan, was within the scope of his employment." Plaintiff's assertion that Rangdunu's "ends . . . and stated goal of . . . 'better serv[ing] the customers'" were being served when

Cooney left the store to get pizza is unavailing. Even if Shahjahan had knowledge that Cooney left the store to pick up food for lunch, the undisputed fact remains—this excursion was not at the request of his employer or consistent with Cooney's job responsibilities.

An employee's action is considered to be within the scope of employment if: (1)"it is of the kind he is employed to perform;" (2) "it occurs substantially within the authorized time and space limits;" (3) "it is actuated, at least in part, by a purpose to serve the [employer];" and (4) "if force is intentionally used by the [employee] against another, the use of the force is not unexpected by the [employer]." Davis, 209 N.J. at 303 (quoting Restatement (Second) of Agency § 228 (1)).

Cooney was not acting within the scope of his employment at 7-Eleven when he left the store and drove to pick up a pizza for himself and his co-worker. First, Cooney's decision to leave the store to get food was in no way related to the kind of work that he was employed to perform—attending to the store's customers. Ibid. Although Cooney's actions occurred during his shift, it is not dispositive of whether his conduct was within the scope of his employment. Ibid. His decision to pick up the pizza was purely personal and did not serve the employer's interest in better serving its customers. Ibid. The final factor,

the use of force, was not applicable under these circumstances. Ibid. The weight of the relevant factors supports the motion judge's finding that Cooney's conduct fell outside the scope of his employment.

B.

Next, we consider the applicability of the "going to" and "coming from" rule to these facts. Plaintiff contends this rule only applies to "an employee . . . commuting to and from the workplace before the start of and after the end of the workday," and when an employee leaves the workplace in the middle of the workday, that presents a "different" situation. Plaintiff further argues that the later scenario does not implicate employer control and/or benefit. We disagree.

New Jersey recognizes the general rule that "an employee who is 'going to' or 'coming from' his or her place of employment is not considered to be acting within the scope of employment." Carter, 175 N.J. at 412 (citing Mannes v. Healey, 306 N.J. Super. 351, 353-54 (App. Div. 1997) (citations omitted)). The reason for not imposing vicarious liability on an employer when an employee is driving his or her personal vehicle to and from the workplace is because "the element of 'control' by the employer is lacking." Mannes, 306 N.J. Super. at 354 (quoting Jones v. Blair, 387 N.W.2d 349, 355 (Iowa 1986)) (citation omitted). This general concept applies when an employee travels to or from the workplace,

regardless of whether the coming or going is at the beginning, middle or end of the day, during times when an employer has no control over the employee's conduct.

There are some recognized exceptions to the "going to" or "coming from" rule; for example, when an employee is engaged in a special errand or mission, or when an employer requires the employee to drive his or her own vehicle. Carter, 175 N.J. at 412. None of these exceptions, however, apply to these facts. Indeed, it is undisputed that Shahjahan did not send Cooney to get the pizza, nor did he require Cooney to use his own vehicle. We discern no error in the motion judge's finding that the "going to" and "coming from" rule applied under these circumstances and neither did any of its exceptions. Therefore, we agree with the judge that no vicarious liability attaches to these circumstances.

Based on our de novo review and viewing the facts in a light most favorable to the non-moving party—i.e. plaintiff—Cooney's actions were "outside of the scope of his [] employment [because they were] 'different in kind from that authorized . . . [and] too little actuated by a purpose to serve the master.'" Davis, 209 N.J. at 303 (quoting Restatement (Second) of Agency § 228 (2)). Nor does the record show that Cooney's actions served a dual purpose. This was not a "special errand" or a task done for the benefit of the employer

11

and for the employee's personal interests. Even assuming Cooney left the premises with Shajahan's permission, his excursion to pick up the pizza did not in any way benefit his employer. Therefore, summary judgment was appropriate because there was no genuine factual dispute as to whether Cooney's actions fell within the scope of his employment.

IV.

We next address plaintiff's contention that the court erred in not accepting the reasoning and "blueprint" provided by the Delaware Supreme Court in Wilson, 537 A.2d at 187. The motion judge rejected the holding in Wilson because it is: (1) a non-binding out-of-state decision; (2) factually distinguishable from the present case; and (3) fails to apply New Jersey jurisprudence of the "coming to" and "going from" rule or the employer 'control' aspect of the dual purpose exception.

The motion judge correctly noted that Wilson was factually distinguishable in two key respects. First, the manager in Wilson was "expressly permitted" to leave the premises for his half-hour break. Wilson, 537 A.2d at 187. Assuming that Cooney was permitted to leave the premises for purposes of the motion, Wilson was further distinguishable because the manager's usual routine was to order and pick up sandwiches for himself and the other

12

A-1065-24

employees. Ibid. This routine practice combined "a personal activity, going to lunch, with the business of his employee, getting lunch for co-workers who must remain on the job to serve [the employer's] customers." Ibid. In the present case, the record does not show that Cooney's excursion to get pizza was routine and certainly not one that served a dual purpose.

We also discern no error in the court's legal analysis of Wilson. The court correctly discerned that Wilson fails to address the "control" issue that "is critical to how a New Jersey court would decide the case." The case also does not address the "going to" and "coming from" rule or the specific dual purpose exception to the rule as set forth in Carter v. Reynolds, 175 N.J. at 414. The Court in Carter explained that "the noted exceptions [to the 'going to' and 'coming from' rule exist because these exceptions] involve[] some control over the employee's actions and a palpable benefit to be reaped by the employer, thus squarely placing such conduct back into the vicarious liability construct of the Restatement." Ibid.

This key concept of control is conspicuously missing from the Wilson Court's analysis, and as the motion judge aptly noted, is the reason "why these [dual purpose] exceptions exist." As the motion judge explained, Rangdunu had no control over what Cooney did when he left the store. Thus, unlike Wilson,

A-1065-24

the dual purpose exception did not apply under these circumstances.  We concur with the motion judge's decision to reject the holding in <u>Wilson</u> as factually distinct and legally non-binding.

To the extent we have not addressed any arguments raised by plaintiff, they lack sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1065-24